**PUTNAM HIGH YIELD MUNICIPAL TRUST, et al., Plaintiffs,**

v.

**FIRST CITY TEXAS, HOUSTON, N.A., et al., Defendants.**

**Civ. A. No. H–93–413.**

United States District Court, S.D. Texas, Houston Division.

Aug. 19, 1994.

Timothy M. McDaniel, Houston, TX, for plaintiffs.

Bobby Nick Turner, Dallas, TX, for defendant First City.

Bentley C. Kelly, III, Dallas, TX, for defendant Tellepsen.

OPINION ON PARTIAL SUMMARY JUDGMENT

HUGHES, District Judge.

1. *Introduction.*

Bondholders bring a breach of trust action against the bank that held funds in trust for the completion of a specific airlines project and against a contractor on another airline project that has been paid with those funds. Because the bank breached the trust agreement, the bondholders will be granted a judgment on liability.

2. *Background.*

Continental desired to construct a new flight kitchen at Houston's Intercontinental Airport. The funds necessary to construct the flight kitchen were obtained through the issuance of $19,600,000 of tax exempt bonds by the Harris County Industrial Development Corporation. The plaintiffs purchased the bonds, and the bond proceeds were placed with First City under the terms of a trust indenture. Continental executed a note in favor of Harris County. The financing documents included a loan agreement and a deed of trust under which Continental granted Harris County a security interest in the flight kitchen. The bonds were to be redeemed through Continental's payment of the note.

The flight kitchen was built as scheduled and under budget. Under the financing documents, bond proceeds remaining after the completion of the project were to be used to redeem the bonds. Instead, Continental and Harris County entered into a purported amendment to the financing documents so that Continental could use the excess bond proceeds to construct a flight training center where the old flight kitchen stood. This new project was not subject to the deed of trust covering the flight kitchen construction.

Continental presented requisition certificates and draw requests to First City, and the bank distributed bond proceeds to Continental to construct the flight training center. First City eventually approved the disbursement of about $1.4 million for work done on the flight training center. Tellepsen was one of the contractors that Continental paid to furnish labor and materials for work on the flight training center. Tellepsen fully performed under its contract with Continental and was paid $73,719 out of the funds disbursed by First City.

After both facilities were completed, Continental, as it does occasionally, filed for bankruptcy. Continental owed Tellepsen $194,674 at the time that it filed, and it had approved a requisition certificate for $147,995, which it had submitted to First City. That certificate was not paid because of the bankruptcy, and Tellepsen recovered only $5,309.99 from Continental's estate. Tellep-

sen is the only contractor that was not fully paid on the flight training center project before the bankruptcy.

First City, as it does occasionally, failed, and it was seized by the FDIC. The trust funds still held by First City were transferred to its newest incarnation, New First City. That bank in turn was declared insolvent, and the trust funds were transferred to Texas Commerce Bank, where they rest.

### 3. The Claims.

The bondholders have settled with Harris County. They have now turned to the bank. They claim that First City breached the financing documents by (a) allowing an amendment that had a material, adverse effect on the bondholders without obtaining the bondholders' consent, and (b) approving an amendment and disbursing funds without giving its prior written consent to the amendment and without granting the bondholders a lien on the new project.

The FDIC, standing in the shoes of First City, argues that (a) the amendment did not have a material and adverse effect on the bondholders, and (b) First City's disbursements under the amendment operate to approve the amendment, which, it claims, the bondholders admit.

Tellepsen stipulates that it has no claim against the FDIC as receiver for First City but that it only wants the funds held in trust by Texas Commerce Bank. It wants the unpaid balance for its work on the flight training project of $189,364.01.

### 4. Material and Adverse.

■ The trust indenture allowed for two types of amendments, amendments that materially and adversely affect the interests of the bondholders and those that do not. See June 1, 1989, Trust Indenture Between Harris County Industrial Development Corporation and First City, Texas–Houston, N.A. §§ 901, 902. The amendment to the trust indenture was material and adverse to the bondholders, and by failing to get their written consent, First City has breached the trust indenture.

The trust indenture requires the consent of the bondholders to an amendment to the financing documents that is material and adverse to their interests. Trust Indenture § 902(a). The FDIC explains why the use of the remaining bond proceeds for the training center was consistent with the trust documents: (a) the new project was not new, but a permissible modification, and (b) the amendment was not adverse.

Modification of the project under the loan agreement may take place without the bondholders' consent. Trust Indenture § 901(g). The agreement allows for revision of the plans and specifications of the project as long as the result constitutes a "project" as the term is defined in the law. June 1, 1989 Loan Agreement Between Harris County Industrial Development Corporation and Continental Airlines, Inc. § 2.2. The section allowing a revision specifically refers to the description of the project in an exhibit to the agreement. Id.

The description is of a flight kitchen facility. It describes what the kitchen will contain, the dimensions and specifications of the building, and the site for the project. See Exhibit A to Loan Agreement. There is no mention of any other contemplated construction other than a new flight kitchen. There is simply no relationship between the flight kitchen and the flight training center, in this construction or in airline operation.

■ This obvious point was supported at oral argument by the FDIC's assertion that the connection existed because the new flight training center was built where the old flight kitchen had been. That is patently absurd. Since the projects are wholly unrelated, the FDIC cannot take advantage of the clause allowing modifications to the project without the consent of the bondholders.

The amount expended on the flight training project was approximately $1.4 million, about seven percent of the face amount of the bonds. The FDIC asserts that this amount cannot be considered material. Since the entire amount of the bond proceeds was available for the flight kitchen construction, the expenditure of an excess on the flight training center cannot be considered adverse.

**150**

While some level of misapplication may be immaterial, $1.4 million is well above that level, whatever it may be. Any amount of the bond proceeds spent on an unauthorized project is presumptively material. Certainly, the FDIC would think it material if bank officials decided to pocket $1 million as a bonus for a job well done. The FDIC does not take the position that either the dollar amount or the percentage of the total is an acceptable standard of fidelity. An additional adversity to the bondholders of this expenditure is the lack of a lien placed on the earnings from the flight training center in favor of the bondholders. A lien on the flight kitchen proceeds was contractually obligated. The amendment materially and adversely affected the interests of the bondholders, and First City breached the trust indenture.

### 5. *Non–Material Amendments.*

Even if the amendment was not material and adverse to the bondholders, First City still has breached two provisions of the trust indenture.

The trust indenture allows parties to enter into an amendment of the trust indenture without the consent of or notice to the bondholders "with the consent of the Trustee." Trust Indenture § 901. This section only applies if the proposed amendment "does not, *in the opinion of the Trustee,* materially and adversely affect the interests of the Bondholders." *Id.* It is undisputed that First City did not give its prior written consent to the amendment. The FDIC asserts that First City's actions in making disbursements after the amendment served as approval.

First City's after the fact actions do not satisfy the consent required by the trust indenture. In the first place, the Loan Agreement specifies that Harris County will not join in any modification of the bond documents without the prior written consent of the trustee. Loan Agreement § 6.2(d). First City's failure to provide that written consent is at a minimum a breach of the loan agreement, and it is evidence of a failure to live up to the trust indenture.

More important, First City's consent was required because it had to make the determination that the amendment was not material and adverse to the bondholders. Since the bondholders did not even have to be notified (and in fact were not) they relied on First City to protect their interests.

One of three things had to have happened:
A. First City found that the amendment was material and adverse, but funded anyway;
B. First City found that the amendment was not material or adverse and funded; or
C. First City made no determination at all and funded.

Under each, First City has breached the consent provision of the indenture.

The FDIC argues that two transmittal letters sent by counsel for Harris County to First City are evidence of the required consent. These letters indicate that copy of the proposed amendment was being forwarded to First City at the request of a First City employee in order for First City's review. The second letter encloses the executed amendment, advising First City that Harris County approved the amendment and that Continental was being advised that it could use trust proceeds for the flight training center.

Of course, the problem with these letters is that they go the wrong way. The FDIC admits that First City records do not indicate whether or not any comment (much less consent) was offered by First City to anyone. No approval by Harris County, the debtor, can be the equivalent of notice or consent by the creditors, the bondholders. First City breached its duties under the trust indenture.

Additionally, under the non-material amendment section the trustee was supposed to receive for the benefit of the bondholders a lien on the proceeds from the new project. Trust Indenture § 901(b). It is undisputed that this did not occur. First City's failure to obtain the lien is both a breach of the trust indenture and is a breach of its responsibility as a fiduciary for the bondholders' interests.

### 6. *Tellepsen's Claims.*

Because the bond proceeds were illegally used to pay contractors on a unautho-

rized project, Tellepsen has no claim to the remaining proceeds held in trust by Texas Commerce Bank. Tellepsen admitted as much at oral argument. The bondholders argue that Tellepsen must also pay back the money it has already received from the trust. Tellepsen responds that equity should place its interest ahead of First City's.

 Continental's bankruptcy paid secured creditors five cents on the dollar. All were equally damaged, and all deserve equitable consideration. While Tellepsen is *factually* entitled to be paid for its work, it is not legally entitled to be paid *by the bondholders* for work done on a project they had not agreed to fund. This is what has occurred. The equities do not favor Tellepsen over the bondholders; the law favors the bondholders. Tellepsen will be obliged to refund to the bondholders the money it received from the trust, after the damages portion of this litigation is concluded.

### 7. Conclusion.

The court holds First City liable to the bondholders for its breach of contract and breach of fiduciary duties. The bondholders own the remaining assets in trust at Texas Commerce Bank. Tellepsen is liable to the bondholders for the money it received from the trust, and it has no right to any remaining trust proceeds.